IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ALEKSANDR MIKITIYUK, | CV-04-342-KI |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

TIM WILBORN
2020-C SW 8th Avenue, PMB # 294
West Linn, OR 97068-4612

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
District of Oregon
NEIL EVANS
Assistant United States Attorney

1 - ORDER AND OPINION

1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

L. JAMALA EDWARDS
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

## BACKGROUND

Plaintiff, Aleksandr Mikitiyuk, brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). 42 U.S.C. § 1383(c)(3). This court has jurisdiction under 42 U.S.C. § 405(g).

Mikitiyuk was approximately 52 years old at the time of his alleged disability onset on January 1, 1993. Tr. 24, 276. At that time he lived in the Ukraine. He alleges disability based on arthritis, fatigue, hemorrhoids, and pain in his left arm, left shoulder, stomach, and chest. Tr. 96. According to plaintiff, his formal education ended in the seventh grade. Tr. 102. His past work includes construction painter and painter foreman. Tr. 97.

On appeal to this court, plaintiff contends the ALJ erred by (1) improperly discrediting his own testimony and the testimony of his wife; (2) improperly rejecting two physician's opinions; (3) failing to find his heart condition is a severe impairment; and, (4) concluding that plaintiff remains capable of returning to his past work as a painter foreman. For the reasons that follow, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

# STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert denied</u>, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id</u>.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. <u>Andrews</u>, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

# DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one the ALJ found plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 29; see 20 C.F.R. § 416.920(b).

At step two, the ALJ found plaintiff suffered from impairments, severe within the meaning of the Act, including: bilateral rotator cuff tendonitis, osteoarthritis of the right acomioclavicular joint, and degenerative joint disease of the left knee. Tr. 25, 29; see 20 C.F.R. § 416.920(c).

At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments), considered so severe as to automatically constitute a disability. Tr. 26, 29; see 20 C.F.R. § 416.920(a)(4)(iii), (d).

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform sedentary work, limited by: standing and walking for two hours in an eight hour day; only occasional kneeling, crouching, crawling, stooping, and climbing; and, no reaching above shoulder level with the right arm. Tr. 29, 20; see 20 C.F.R. §§ 416.920(e), 416.945, 416.967; see also Social Security Regulation (SSR) 83-10.

At step four, the ALJ found plaintiff was able to perform his past relevant work as a painter foreman, and therefore that he was not disabled. Tr. 30; see 20 C.F.R. §§

416.920(a)(4)(iv), 416.920(f). Accordingly, the ALJ did not proceed to step five of the sequential evaluation.

## DISCUSSION

### I. The ALJ provided clear and convincing reasons to discredit plaintiff.

Plaintiff contends the ALJ failed to cite clear and convincing reasons for discrediting his testimony about his symptoms and limitations. A disability claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms he alleges. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Once he has done so, and assuming there is no evidence of malingering, the ALJ can only reject his subjective claims for clear and convincing reasons, supported by substantial record evidence. See Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). Examples of clear and convincing reasons include: (1) claimant's reputation for dishonesty, prior inconsistent statements concerning her symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexpected or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) medical evidence tending to discount the severity of the claimant's subjective claims; and (4) inconsistency between the claimant's daily activities and the degree of disability she alleges. See Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ found plaintiff's testimony less than fully credible for two main reasons: (1) objective findings by credible physicians indicate that he retains the ability to perform the basic work activities of his former job, and (2) plaintiff's subjective complaints are inconsistent with these findings. Tr. 27. The ALJ pointed out that plaintiff claims he is unable to walk, sit or

stand for any length of time due to his pain (Tr. 286), that he needs to rest numerous times during the day to alleviate pain (Tr. 287), and that his daily activities are generally limited due to pain and fatigue. Yet, plaintiff attends English classes three days a week and studies at home (Tr. 290), he drives his wife everywhere because she does not drive, he socializes with family members on a regular basis, and he attends church twice a week for two hours at a time (Tr. 293-95).

In terms of the objective medical findings, Bert Ferrell, M.D. reported that plaintiff has mild cervical arthritis, which is well managed with medication. Tr. 28, 155-60. Dr. Ferrell found no significant limitations with plaintiff's left knee or shoulder. Id. He noted plaintiff reported a history of three heart attacks in the Ukraine, but had no signs of heart trouble and was told to discontinue use of nitroglycerin patches in favor of a daily tablet of Dilacor. Id. Plaintiff denied having problems with his stomach, and there was no evidence of such problems. Id.

Neal Rendleman, M.D., found plaintiff to be in generally excellent physical condition, with excellent muscle mass and normal range of motion in the extremities. Tr. 187-88. Plaintiff stood on one foot to remove his shoes and twisted his shoulder in a complicated internal and external rotation when he took of his clothes. Id. Dr. Rendleman reviewed electrocardiograms and found no evidence of ischemia, which would normally be present after undergoing a heart attack. Id.

Tatsuro Ogisu, M.D., opined the plaintiff does have mild coronary artery disease, but that it does not limit plaintiff in any significant way. Tr. 239. Dr. Ogisu also contradicted plaintiff's contention that he cannot sit for any length of time by finding no limitations whatsoever on his

ability to sit, and that he could stand and walk for at least two hours in an eight hour day. Tr. 242.

Plaintiff argues his testimony is consistent with the assessments of Dr. Davis and Dr. Englander, even if not with the examining physicians noted above. Since I find, below, that the ALJ properly rejected the opinions of these two physicians, I reject this argument. Next plaintiff contends the ALJ's reasoning is impermissibly vague, pointing to the ALJ's statement that "at no time in the medical record did any of the credible treating or examining doctor[s] opine [that plaintiff] was unable to work." Tr. 27. I agree that this finding is irrelevant, but it does not undermine the ALJ's other clear reasons for rejecting plaintiff's testimony. Finally, plaintiff contends the ALJ was simply wrong that plaintiff's activities are inconsistent with the degree of disability he alleges, because plaintiff only takes short drives, and his English classes and other activities allow him to rest before and after he engages in them. While case law certainly supports the argument that one need not be "utterly incapacitated" in order to be found disabled within the meaning of the Act, Reddick, 157 F.3d at 722, when plaintiff's activities are simply inconsistent with the degree of disability he alleges, and his past work as he describes it is no more demanding than the activities he voluntarily engages in, the ALJ may properly use this reason to discredit his claim that he cannot work.

Accordingly, I find the ALJ gave clear and convincing reasons for finding plaintiff less than fully credible, and I find substantial evidence in the record to support those reasons.

## II. The ALJ properly rejected some of the medical evidence.

Plaintiff argues the ALJ improperly rejected the opinions of treating physician Susan Davis, M.D., and examining physician Wayne Englander, M.D. The ALJ is responsible for

7 - ORDER AND OPINION

resolving conflicts and ambiguities in medical evidence. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 1999). The ALJ is not bound by a physician's opinion of a claimant's disability or employability, because these are issues reserved to the Commissioner. See 20 C.F.R. § 404.1527(e); SSR 96-5p. The relative weight afforded the opinion of a physician depends upon his or her opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The opinion of a treating physician deserves more weight than that of an examining physician, and a non-examining physician's opinion is given the least relative weight. Id.; see also Smolen, 80 F.3d at 1285.

The ALJ must provide "clear and convincing reasons," supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999). If a treating physician's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. at 600-601.

### A. Dr. Davis

On August 7, 2000, Dr. Davis filled out a functional capacity check-off form on which she indicated that plaintiff: could sit for a total of 4 hours a day; stand for 30minutes; walk for 30 minutes; never bend, stoop, squat, kneel, or crawl due to osteoarthritis; do no more than light gripping; and had stamina and endurance limitations that would interfere with daily work activities. Tr. 194-96. The ALJ rejected these findings for two reasons. First, according to chart notes Dr. Davis had not seen plaintiff in over a year when she filled out the worksheet. Tr. 29,

8 - ORDER AND OPINION

196. Second, the ALJ found that Dr. Davis' records, containing copies of pulmonary reports, radiologic reports, and a hematology report, did not support Dr. Davis' functional assessment. Tr. 29, 171-80.

Plaintiff argues that since his conditions are degenerative is shouldn't matter that Dr. Davis hadn't seen him in over a year. This argument fails for several reasons. First, plaintiff's unexplained failure to seek any medical treatment in over a year undermines his contention that his condition has worsened. Second, "disability" is defined as a severe physical or mental impairment "which has lasted or can be expected to last for a continuous period of not less than 12 months" and "which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 416.905(a). There is no evidence that the conditions diagnosed by Dr. Davis- atypical chest pain, osteoarthritis, and left shoulder trapezius strain- were expected to last for a continuous period of 12 months. The fact plaintiff stopped seeking medical attention for these conditions suggests that they did not continue.

With respect to plaintiff's argument that Dr. Davis relied on objective medical evidence, I direct plaintiff to Dr. Davis' answer to the question on page 5 of the worksheet, "Are you basing your opinion above primarily on the patient's subjective complaints?" Tr. 196. Dr. Davis answered "yes." Id.

### B.     Dr. Englander

On December 19, 2000, Dr. Englander partially-filled out a physical capacity worksheet indicating that plaintiff has right shoulder tendinitis with chronic pain and that he would be limited from lifting his arms over his shoulders. Tr. 231-34. He estimated that plaintiff could

9 - ORDER AND OPINION

occasionally lift and carry 10 pounds or less, but never over 10 pounds.  Tr. 233.  Then, in a letter dated December 21, 2000, Dr. Englander stated that he saw plaintiff "back today" and that he "continues to have pain in his shoulders bilaterally, with inability to raise the arms above the shoulders, and decreased strength in both shoulders."  Tr. 230.  He opined that plaintiff is "clearly limited in his ability to engage in protracted physical activity," but with the caveat that "I can't offer an objective measure of his ability, and would be afraid of testing to determine this."  Tr. 230.

      The ALJ rejected Dr. Englander's findings because they were admittedly based on plaintiff's subjective complaints, not objective testing.  Tr. 29.  This is a specific and legitimate reason to reject a non-treating physician's contradicted opinion.  I decline to quibble over whether Dr. Englander actually examined plaintiff once or twice (the ALJ says once) because even if he had seen him twice, this would not change the fact he did not perform clinical or laboratory testing, and he was not a treating physician.  Tr. 29.

      In sum, I find the ALJ provided specific and legitimate reasons to reject the contradicted opinions of Dr. Davis and Dr. Englander, and I find substantial evidence in the record to support these reasons.

### III.    The ALJ gave germane reasons to reject plaintiff's wife's testimony.

      The ALJ must account for lay witness testimony and provide germane reasons for rejecting it.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  However, the ALJ is not required to discuss non-probative evidence.  See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  In the case at bar plaintiff's wife briefly testified at the hearing that plaintiff's condition is progressively declining.  Tr. 297.  She said plaintiff drives her to the

store, but she does all the shopping, and the cooking and cleaning. Tr. 298. Plaintiff's wife also testified that he rests after breakfast and lies down after walking. Id.

The ALJ rejected this lay testimony stating "[plaintiff's] wife testified he was, in effect, an invalid which is inconsistent with his own stated activities." Tr. 28. The ALJ also found plaintiff's wife's testimony biased, stating "Both the claimant and his wife came to the U.S. after having reached retirement age in the former Soviet Union. Both applied for SSI, but only her application was granted. She testified that the couple wants a second "pension."" Tr. 28.

The only reference to a "pension" in the transcript is plaintiff's own testimony that "my wife is getting a pension..." referring to her social security disability check. Tr. 293. However, even without this misstatement, I find the ALJ provided germane reasons to discredit plaintiff's wife's testimony, which would not suffice to establish disability anyway.

**IV.     The ALJ's step two finding was supported by substantial evidence.**

At step two of the sequential evaluation the ALJ found that some of plaintiff's impairments qualified as "severe" within the meaning of the Act, but that plaintiff's alleged heart condition did not. Tr. 28. The claimant bears the burden of proving that his impairment is severe. See 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 416.912; See also Gallant v. Heckler, 745 F.2d 1450, 1452 (9th Cir. 1984). An impairment is not severe if it does not significantly limit the physical ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. See 20 C.F.R. § 416.921. The mere fact that a condition has been acknowledged with a medical diagnosis does not in itself equate to a finding of disability. See Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985); Young v. Sullivan, 911

F.2d 180, 183-84 (9th Cir. 1990). Nor will symptoms alone establish the existence of a medically determinable physical or mental impairment. See SSR 96-4p.

Plaintiff relies on Dr. Davis and Dr. Englander's rejected functional assessments, above, as evidence that he routinely experiences chest pain and fatigue from walking short distances. He also contends that he uses nitroglycerin "every other day for chest pain" even though he told Dr. Ferrell that he "hardly ever uses the nitroglycerin patch" and that in September, 1998, his "attending physician suggested discontinuing the nitroglycerine patch...". Tr. 159.

Accordingly to plaintiff's medical record in October, 1998, he underwent treadmill testing which revealed that he had good exercise tolerance with no discomfort, and that he should not be on prescription medication for his heart. Tr. 138. These findings remained consistent when Dr. Ferrell examined plaintiff in January, 1999, and found regular heart rate and rhythm, no murmurs, thrills, shocks or gallops. Tr. 157. Finally, in October, 2000, plaintiff underwent a cardiac cauterization that revealed a "nearly normal heart" with only "mild coronary artery disease." Tr. 202. On this basis, I find the ALJ reasonably determined that plaintiff did not have a severe heart condition that limited his ability to perform basic work functions.

V.      **The ALJ properly found plaintiff not disabled at step four.**

To determine whether a claimant can perform past relevant work, the Commissioner uses the tests described in Social Security Ruling (SSR) 82-61. First, the ALJ can determine whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it. Second, the ALJ may determine whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. The descriptions of

functional demands published in the Dictionary of Occupational Titles (DOT) can be relied upon — for jobs that are listed in the DOT — to define the job as it is usually performed in the national economy. Id.

In the case at bar, the ALJ appears to have applied the first test, to conclude that plaintiff retains the capacity to perform the job of painter foreman as he performed it in the Ukraine. He wrote,

> The claimant, at the hearing, testified his past work as a painter foreman did not require him to use his arms, there was no overhead reaching, he stood for only an hour a day and basically chose paint colors and gave directions. Given the claimant's residual functional capacity as identified above, I find the claimant is capable of returning to his past relevant work as a painter foreman, as he described it, despite limitations resulting from his physical impairments.

Tr. 29. Plaintiff's testimony regarding his job duties follows:

> ALJ: When you were a foreman, did you work as a foreman full-time? Go ahead.
>
> P: Almost, but not completely full day. I was giving them work in the morning, and then I was coming back after dinner. So not complete day.
>
> ALJ: But when you worked being a foreman, were you being a painter? In other words, were you- - when you became a foreman did you stop the painting part?
>
> P: Yes.
>
> ALJ: But did you spend - - as a foreman, did you spend some of your time painting?
>
> P: No, I didn't paint myself. I was preparing paint. I was giving directions and showing them how to paint. Doctor told me that those paints weren't good for me.
>
> ALJ: Did you physically mix the paints?
>
> P: Before that, I was mixing, but after that I wasn't. I just was telling them how to do that.
>
> ALJ: When you were a foreman, how much of the day did you stand?

> P: Maybe one hour when I was coming - - I think it was about one hour.
>
> ALJ: And about how much of the day did you sit?
>
> P: I wasn't sitting much. I was coming and preparing and telling them I was going home. I was going to the office to work with documents and other paperwork.
>
> ALJ: So, how much time in a day as a foreman did you spend at the jobsite - - at the paint site?
>
> P: I tried not to be where painting was going on or where pain was. I try to do it in separate room to give directions to send people to work and to explain things. And then I was living place - - location where actual painting was going on.
>
> ***
>
> ALJ: No, I understand that, but how long were you at the office where the boss was during the day?
>
> P: About half-hour. Sometimes hour or so.

Tr. 283-84.

Plaintiff contends the ALJ erroneously concluded that his past job did not require him to use his arms because in fact he mixed paint and did paperwork. This argument is without merit. Plaintiff's testimony, above, was that he did not mix paint once he became a foreman. The ALJ's reference to plaintiff's use of his arms, in context, clearly refers to manual work such as overhead lifting, and not paperwork. Further, plaintiff's RFC does not preclude the types of motions involved in doing paperwork.

Next, plaintiff contends the ALJ failed to determine how much weight he had to lift and how often, and with what frequency he would need to crouch, crawl, kneel, grip and so forth. This argument is also without merit because plaintiff's description of his job duties- instructing the painters, doing paperwork, and following up at the end of the day- by inverse inference, excluded lifting, crouching, crawling, kneeling, gripping, etc. Since the ALJ applied the first test

under SSR 82-62, he didn't need to look into whether these activities would be required of a painter foreman as the job is generally performed in the national economy.

Finally, plaintiff argues "there is no evidence in the record as to whether [his work as a painter foreman in the Ukraine] constituted substantial gainful activity." The burden at step four is on the claimant to show that he cannot do his past relevant work which constituted substantial gainful activity. See 20 C.F.R. § 416.965(a). Neither the regulations nor administrative policy statements address how SGA is to be calculated when a claimant's past relevant work was in another country. However I find the ALJ reasonably took plaintiff's word that he worked "almost" full time as a painter foreman. Notably, even if plaintiff's painter foreman job was part-time, it could still qualify as SGA. See 20 C.F.R. § 416.972(a)("work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before"). Therefore, the ALJ properly determined that plaintiff failed to prove he could no longer perform his past relevant work.

## CONCLUSION

Based on the foregoing, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this ___14th___ day of September, 2005.

       /s/ Garr M. King
       Garr King
       United States District Court Judge